# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YASMIN DIAZ, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 2:16-cv-00179-NBF ) District Judge Nora Barry Fischer |
| AMORE LIMITED PARTNERSHIP, d/b/a AMORE MANAGEMENT COMPANY, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is the March 27, 2017 Motion for Summary Judgment (Docket No. 41) filed by Amore Limited Partnership, d/b/a Amore Management Company ("Defendant" or "Amore"), pursuant to Federal Rule of Civil Procedure 56(a). Defendant seeks judgment as a matter of law with respect to all claims stated in the Amended Complaint of May 5, 2016 (Docket No. 10) filed by Yazmin Diaz ("Plaintiff") for race-based discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA").[1] This Court exercises subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. After careful consideration of the motion, the memoranda of the parties, oral argument, and the entire record, the Court will deny Defendant's motion for summary judgment.

### II. PROCEDURAL AND FACTUAL BACKGROUND

In 2015, Plaintiff – a Hispanic female and former resident of Puerto Rico – was arranging to move to Pittsburgh, Pennsylvania. (Docket Nos. 43 ¶ 2; 46 ¶ 2). Plaintiff's daughter, Minedy

---

[1] Plaintiff has elected to forego proceeding with her negligence claim. (Docket Nos. 43 ¶ 37; 46 ¶ 37). The Court dismissed same, with prejudice, on May 1, 2017. (Docket No. 48).

1

Rodriguez-Diaz, and grandchildren lived in a Pittsburgh area apartment complex known as Heritage Hills. (Docket Nos. 43 ¶ 3; 46 ¶ 3). Plaintiff wished to live near her family, and so scheduled a tour of the Heritage Hills complex on April 23, 2015. (Docket Nos. 43 ¶ 1; 46 ¶ 1). That day, Leasing Consultant Jordan Nicholson accompanied Plaintiff on the tour on behalf of Defendant. (Docket Nos. 43 ¶ 12; 46 ¶ 12). Plaintiff's daughter and son-in-law were also present. (Docket Nos. 43 ¶ 11; 46 ¶ 11).

During the course of the tour, Plaintiff was apparently startled by a dog in the vicinity of Apartment 1137. (Docket Nos. 43 ¶ 14; 46 ¶ 14). She subsequently fell down three steps. (Docket Nos. 43 ¶ 15; 46 ¶ 15). Nicholson immediately contacted Heritage Hills' Property Manager, John Simons, to inform him of the fall. (Docket Nos. 43 ¶ 22; 46 ¶ 22). Simons contacted fellow employees Eric Paxton and Thomas Levandowski to assist with moving Plaintiff to her daughter's vehicle. (Docket Nos. 43 ¶¶ 23, 25; 46 ¶¶ 23, 25). Plaintiff was then transported to Jefferson Regional Medical Center. (*Id.*).

Directly after the incident, Nicholson, Paxton, and Levandowski completed incident reports. (Docket Nos. 43 ¶¶ 13, 24; 46 ¶¶ 13, 24). Assistant General Manager, William Ardini, also conducted individual interviews of Simons, Nicholson, and Paxton. (Docket Nos. 43 ¶ 8; 46 ¶ 8). Plaintiff and her daughter submitted incident reports and narrative statements on April 24, 2017. (Docket Nos. 43 ¶¶ 9 – 10; 46 ¶¶ 9 – 10). They complained that the dog's owner had violated Heritage Hills' rules by leaving the dog unsupervised. (Docket Nos. 43 ¶ 17; 46 ¶ 17).

Notwithstanding her fall, Plaintiff submitted a rental application on April 28, 2015. (Docket Nos. 43 ¶ 32; 46 ¶ 32). The application was denied on May 11, 2015. (Docket Nos. 43 ¶ 34; 46 ¶ 34). Defendant did not explicitly indicate that Plaintiff's Puerto Rican heritage, or her use of Spanish as her primary language, were reasons for the denial. (Docket Nos. 43 ¶ 42; 46 ¶

42). However, Plaintiff filed a Complaint (Docket No. 1) in this Court on February 18, 2016, claiming – among other things – that Defendant violated the FHA by denying her housing due to her race. An Amended Complaint followed on May 5, 2016 (Docket No. 10), and Defendant filed its Answer (Docket No. 12) on May 19, 2016. The instant Motion for Summary Judgment followed on March 27, 2017. (Docket No. 41). A Response was consequently filed on April 27, 2017 (Docket No. 45), as was a Reply on May 11, 2017 (Docket No. 49). The Motion being fully briefed, a hearing[2] was convened on June 2, 2017, and the Court heard oral argument from the parties. (Docket No. 55). The Motion is ripe for disposition.

### III.  STANDARD OF REVIEW

A grant of summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Heffernan v. City of Paterson*, 777 F.3d 147, 151 (3d Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). A genuine issue of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" *N.A.A.C.P. v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 – 24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue, in rebuttal.

---

[2]  The parties declined to order preparation of the transcript of the proceeding. (Docket No. 55).

*Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the Court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Further, the benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 F.App'x 139, 141 n. 4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F. 3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

**IV.　DISCUSSION**

Under the FHA, it is unlawful to:

> discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(b). This provision can be violated by either intentional discrimination or a policy or practice which has a disparate impact upon a protected class. *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 358 F.3d 375, 381 (3d Cir. 2011). Where, as here, a plaintiff's claims are based upon intentional discrimination, but direct evidence is lacking,

the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), may be utilized.

Accordingly, Plaintiff must first adduce sufficient evidence to establish a *prima facie* case of race-based discrimination. *Newell v. Heritage Senior Living, LLC*, 673 F.App'x 227, 231 (3d Cir. 2016). If such a showing is made, Defendant must provide a legitimate, non-discriminatory reason for denial of the application. *Id.* The burden then returns to Plaintiff, who must demonstrate, by a preponderance of the evidence, that Defendant's explanation is mere pretext. *Id.* As to the first element, a *prima facie* case of race-based discrimination in violation of the FHA requires evidence of the following: (1) Plaintiff is in a protected class; (2) she applied for and was qualified to rent in Heritage Hills; (3) Plaintiff's application was rejected; and, (4) the housing for which she applied remained available for rent. *Koorn v. Lacey Twp.*, 78 F.App'x 199, 207 (3d Cir. 2003).

Presently, Defendant does not dispute Plaintiff's Hispanic heritage and membership in a protected class for purposes of the FHA. (Docket No. 42 at 5). Defendant's only point of contention with Plaintiff's *prima face* case is her purported qualification for housing at Heritage Hills. (Docket No. 42 at 5 – 6). Defendant argues that Plaintiff's application was rejected due to her having "a reputation of being a troublemaker," i.e., her unfounded allegation that Defendant was liable for her fall. (*Id.* at 6). However, it is the burden of the moving party to demonstrate that there is an absence of genuine disputes of material fact, *Duquesne Light Holdings, Inc. & Subsidiaries v. Comm'r of Internal Revenue*, 861 F.3d 396, 403 (3d Cir. 2017), and in light of the evidence advanced in Plaintiff's Response, the Court is inclined to find such a dispute exists.

In his deposition, Ardini unequivocally states that it is the unwritten policy of Defendant to deny applications submitted by individuals threatening a lawsuit – those with a "reputation of

5

being a troublemaker." (Docket Nos. 44-2 at 2; 45-15 at 5). He also testified that when it comes to potentially litigious applicants, the application should be provided to the "executive suite" for a determination. (Docket No. 47-6 at 10). Yet Ardini admits that none of the typical procedures for reviewing an application were followed in Plaintiff's case. (Docket No. 44-2 at 6). Despite Ardini's claim that "[a]ll applications are to be submitted" and no decisions are made until after an evaluation of an application (Docket No. 47-6 at 6), Nicholson testified in her deposition that she was instructed by Ardini to not send Plaintiff's application for processing. (Docket No. 47-3 at 6, 9, 15). Moreover, it was Nicholson's opinion that Plaintiff appeared to be qualified to rent at Heritage Hills. (Docket No. 47-3 at 15). Thus, viewing all material facts in the light most favorable to Plaintiff, there is a genuine dispute which must be submitted to a fact-finder for a determination regarding her qualification for housing at Heritage Hills.

Nonetheless, even if qualified, Defendant argues that Plaintiff's potential litigiousness was a legitimate, non-discriminatory reason for the denial of her application. (Docket No. 42 at 6 – 8). Plaintiff counters that the alleged threat of legal action was merely pretext for discrimination based upon her Hispanic heritage. According to her, Defendant and its employees were aware of Plaintiff's race, as well as her former address in Puerto Rico. (Docket No. 44-1 at 3). She did not, however, provide any indication that she would be filing any sort of law suit related to her fall. As such, and being otherwise qualified for an apartment, the only factor that differentiated Plaintiff from other applicants was her race. (Docket No. 45 at 5 – 8).

The Court notes that once a *prima facie* case has been established, and the "relatively light" burden of demonstrating a legitimate, non-discriminatory reason for denial of housing is met, it is incumbent upon Plaintiff to show pretext "by a preponderance of the evidence." *Newell*, 673 F.App'x at 231 (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). This

6

requires evidence which allows the finder of fact to reasonably infer that the reason for the denial of housing was either a *post hoc* fabrication, or did not actually motivate the denial. *Id.* (citing *Fuentes*, 32 F.3d at 764). Plaintiff can make such showings by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions'" in the proffered legitimate reason that a reasonable finder of fact could rationally determine that Defendant's legitimate, non-discriminatory reason is unworthy of credence. *Id.* (quoting *Fuentes*, 32 F.3d at 765).

As mentioned, above, Plaintiff was taken to the hospital on April 23, 2015. That same day, Simons was working with Nicholson, and helped her close down the rental office at around 7:00 p.m. (Docket No. 44-11 at 5 – 6). Simons recalls Plaintiff's daughter coming to the office just as it was closing in order to threaten legal action[3] if her mother's medical bills stemming from her fall were not paid.[4] (Docket No. 44-11 at 5 – 6). Simons later reported this encounter to Ardini. (Docket No. 44-11 at 6).

However, Plaintiff argues that this claim by Simons cannot be true. First, the medical records from Jefferson Regional Medical Center on April 23, 2015, indicate that Plaintiff was not discharged until approximately 8:17 p.m., and that Plaintiff's daughter was present and went over the discharge instructions with medical staff. (Docket No. 47-5 at 1). Further, Nicholson testified that she had no awareness of a threatened lawsuit until after Plaintiff's application was denied. (Docket No. 47-3 at 7). In spite of Defendant's purported policy requiring documentation of such incidents, Simons also did not make any record of the alleged threat. (Docket No. 44-11 at 9). Plaintiff's daughter testified at her deposition that she had never

---

[3] Simons admitted that he never heard Plaintiff or her daughter explicitly state that they would sue Defendant. (Docket No. 47-4 at 7).

[4] Simons also claims that Plaintiff's daughter would thereafter appear at the office on a regular basis to make such threats. (Docket No. 44-11 at 8). Simons never documented the alleged threats. (Docket No. 44-11 at 9).

7

contemplated legal action before the denial, because Simons had always assured her that Defendant would pay Plaintiff's medical expenses. (Docket no. 47-2 at 9).

Indeed, Plaintiff's daughter explained that it was Simons that contacted her at the hospital on April 23, 2015, to talk about the fall. (Docket No. 44-4 at 3). Simons asked that she come into the office on April 24. (*Id.*). At that meeting, Simons confirmed that Defendant would pay Plaintiff's medical bills and asked that the bills be forwarded to Defendant. (Docket No. 44-4 at 4). Plaintiff and her daughter also provided narrative statements that day in which they expressed some worry about Plaintiff's medical bills. (Docket Nos. 44-5; 44-6). Neither statement mentioned a lawsuit. (*Id.*).

Although Ardini represented that it was company policy to submit all applications, that applications submitted by individuals likely to be litigious were to be sent to Defendant's "executive suite," and that he was under the impression that the application had been properly submitted (Docket No. 47-6 at 6, 10, 16), Nicholson testified that Ardini instructed her not to submit Plaintiff's application for review. (Docket No. 47-3 at 6, 9, 15). The rental application bears no indication of processing. (Docket No. 44-1 at 1). Plaintiff's rejection letter makes no mention of the reason for the denial. (Docket No. 44-14). In fact, Ardini conceded during his deposition that the typical procedures for reviewing an application were not followed in Plaintiff's case. (Docket No. 44-2 at 6). As previously noted, Nicholson thought that Plaintiff appeared to be qualified. (Docket No. 47-3 at 15).

When the Court views this record in the light most favorable to Plaintiff, as it must, it is confronted with numerous contradictions and questions of fact flowing from the witnesses' testimony. *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 – 21 (3d Cir. 2006). These issues are not amenable to resolution by the Court at summary judgment. *Id.* (citing

*Country Floors, Inc. v. Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1062 (3d Cir. 1991)). Thus, the Court cannot say that – as a matter of law – Plaintiff was denied housing for a non-discriminatory reason. Sufficient evidence has been set forth to allow a reasonable finder of fact to infer that Plaintiff's litigiousness or reputation as a troublemaker were either *post hoc* fabrications, or did not actually motivate her denial.

V. CONCLUSION

Based upon the forgoing, and viewing all record evidence in the light most favorable to the non-moving party, the Court finds that Plaintiff has adduced sufficient evidence to establish a *prima facie* case of race-based discrimination under the FHA. Accordingly, Defendant's Motion for Summary Judgment will be DENIED.

An appropriate order will follow.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: August 18, 2017

cc/ecf: All counsel of record.